EAST 10TH STREET ASSOCIATES, Respondent, v ESTATE OF STUART GOLDSTEIN et al., Respondents, and ROBERT WELLS, Appellant.

First Department, March 13, 1990

APPEARANCES OF COUNSEL

*Michael B. Kramer* for respondent.

*James Briscoe West* for appellant.

*Steven A. Rosen (Paula L. Ettelbrick* and *Evan Wolfson* with him on the brief), for Lambda Legal Defense and Education Fund and others, *amici curiae.*

*William B. Rubenstein, Nan D. Hunter* and *Judith Levin,* and *Robert Levy* for American Civil Liberties Union and others, *amici curiae.*

## OPINION OF THE COURT

ASCH, J.

Robert Wells and Stuart Goldstein met in 1973 and entered into a "gay-life partnership" which lasted until Goldstein's death in October 1987. In 1977, Goldstein and Wells together moved into the apartment at issue, which was rent stabilized with Goldstein the named tenant on the lease. Wells has made the apartment his family home for more than 12 years. The evidence clearly indicates that he considered the apartment his permanent family home. Both these individuals demonstrated a high level of emotional commitment to one another and took care of each other's day-to-day needs. They were open about their relationship, and their devotion to one another as life partners was apparent to their family and friends, as is reflected in affidavits by Goldstein's mother and son, who considered Wells to be a part of their family and have characterized the relationship of their son and father as that of a spouse to Wells.

After a prolonged serious illness, Goldstein died of AIDS in October 1987.

The Civil Court granted the landlord petitioner's cross motion for summary judgment "reluctantly", following the decision of this court in *Braschi v Stahl Assocs. Co.* (143 AD2d 44), and the Appellate Term affirmed that determination without opinion, granting leave to appeal to this court.

The case relied upon by the Civil Court for its determination has been reversed by the Court of Appeals *(Braschi v Stahl Assocs. Co.,* 74 NY2d 201).

In *Braschi (supra),* the appellant was the surviving gay life partner of the tenant of record. The apartment there was covered by the rent-control regulations. Those regulations

extended noneviction protection to a surviving spouse and/or to "some other member of the deceased tenant's family" who was residing in the apartment. Neither the regulation nor the Emergency Housing Rent Control Law had any more specific definition of "family", and the Court of Appeals in its interpretation of that term concluded: "[It] should not be rigidly restricted to those people who have formalized their relationship by obtaining, for instance, a marriage certificate or an adoption order. The intended protection against sudden eviction should not rest on fictitious legal distinctions or genetic history, but instead should find its foundation in the reality of family life. In the context of eviction, a more realistic, and certainly equally valid view of a family includes two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence. This view comports both with our society's traditional concept of 'family' and with the expectations of individuals who live in such nuclear units". *(Braschi v Stahl Assocs. Co., supra,* at 211.)

The court went on to give the factors which enter into the assessment of a relationship entitled to such "family" protection. "The determination as to whether an individual is entitled to noneviction protection should be based upon an objective examination of the relationship of the parties. In making this assessment, the lower courts of this State have looked to a number of factors, including the exclusivity and longevity of the relationship, the level of emotional and financial commitment, the manner in which the parties have conducted their everyday lives and held themselves out to society, and the reliance placed upon one another for daily family services * * *. These factors are most helpful, although it should be emphasized that the presence or absence of one or more of them is not dispositive since it is the totality of the relationship as evidenced by the dedication, caring and self-sacrifice of the parties which should, in the final analysis, control." *(Supra,* at 212-213.)

*Braschi (supra),* of course, involved the interpretation of a different rent regulation than that controlling here. The Rent Stabilization Code which governed at the relevant times in this matter defines "family member" to include husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-

in-law, mother-in-law, son-in-law, or daughter-in-law (Rent Stabilization Code [9 NYCRR] § 2520.6 [o]).

However, we find that the decision in *Braschi (supra)* provides a controlling precedent herein since there is no significant distinction between the two regulatory schemes which would mandate a different definition of "family". Thus, in determining that "a more realistic, and certainly equally valid, view of a family includes two adult lifetime partners whose relationship is long-term and characterized by an emotional and financial commitment and interdependence", the Court of Appeals specifically placed this statement "[i]n the context of eviction", *not* "in the context of eviction from a rent controlled apartment" *(supra,* 74 NY2d, at 211). It would be anomalous to hold that a life partner could be a valid family member for the purpose of protection from eviction from a rent-controlled apartment but not a valid family member insofar as eviction from a rent-stabilized apartment is concerned. Citing the Emergency Housing Rent Control Law, the Court of Appeals described its purpose to " 'prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices tending to produce threats to the public health * * * [and] to prevent uncertainty, hardship and dislocation' " *(Braschi v Stahl Assocs. Co., supra,* at 208, quoting L 1946, ch 274, codified, as amended at McKinney's Uncons Laws of NY § 8581 *et seq.).* The purpose of the Rent Stabilization Law is substantially the same. "[U]nless residential rents and evictions continue to be regulated and controlled, disruptive practices and abnormal conditions will produce serious threats to the public health, safety and general welfare" (Rent Stabilization Law [Administrative Code of City of New York] § 26-501).

Extension of this definition of family in the rent-stabilization context, moreover, is much less onerous to the landlord in the individual case. thus, in a rent-controlled apartment, a vacancy permits the landlord to decontrol the apartment and return it to market rents. In rent stabilization, a vacancy merely affords the landlord the opportunity to offer a vacancy lease with a slightly higher rent increase.

The Division of Housing and Community Renewal has obviously considered these points, as well as whether the decision in *Braschi (supra)* has rendered its prior definition of "family" arbitrary and capricious to the extent that it does not include protection for functional family members. This agency has

now expanded its definition of "family", in accordance with the *Braschi* decision, to cover unrelated family members in rent-stabilized apartments.

Accordingly, the order of the Appellate Term, First Department (Stanley S. Ostrau, P. J., Stanley Parness and William P. McCooe, JJ.), entered February 27, 1989, which affirmed the order of the Civil Court, New York County (Louis B. York, J.), entered September 14, 1988, which, *inter alia,* granted petitioner East 10th Street Associates' cross motion for summary judgment for possession of the premises, should be reversed, on the law, to the extent appealed from, the cross motion denied, and the motion by respondents to dismiss the petition granted, without costs or disbursements.

MURPHY, P. J., ROSENBERGER and KASSAL, JJ., concur.

Order, Appellate Term, First Department, entered February 27, 1989, unanimously reversed, on the law, to the extent appealed from, without costs and without disbursements, the cross motion denied, and the motion by respondents to dismiss the petition granted.