RENT STABILIZATION ASSOCIATION OF NEW YORK, INC., et al., Respondents, and SMALL PROPERTY OWNERS OF NEW YORK, Intervenor-Respondent, v RICHARD L. HIGGINS, as Commissioner of the New York State Division of Housing and Community Renewal, Appellant, and ROBERT WELLS et al., Intervenors-Appellants.

RENT STABILIZATION ASSOCIATION OF NEW YORK, INC., et al., Appellants, and SMALL PROPERTY OWNERS OF NEW YORK, Intervenor, v RICHARD L. HIGGINS, as Commissioner of the New York State Division of Housing and Community Renewal, Respondent, and ROBERT WELLS et al., Intervenors-Respondents.

First Department, December 4, 1990

## APPEARANCES OF COUNSEL

*Sherwin Belkin* of counsel *(Magda L. Cruz* and *Martin J. Heistein* with him on the brief; *Belkin Burden Wenig & Goldman,* attorneys), for appellants.

*Ronald D. Hariri* of counsel *(Abady, Jaffe & Hariri,* attorneys), for intervenor-respondent and intervenor.

*Cullen S. McVoy* of counsel *(Daniel E. Konig* and *Harvey M. Berman* with him on the brief; *Dennis B. Hasher* and *Robert Abrams, Attorney-General,* attorneys), for appellant.

*Lynn Kelly* of counsel *(Janet Sabel, Sandra R. Farber, Paris Baldacci* and *Diane Lutwak* with her on the brief; *Jane E. Booth, Kathleen Masters, Douglas J. Seidman* and *Douglas E. Hoffman,* attorneys), for The Legal Aid Society, on behalf of Disabled In Action and another, intervenors-appellants.

*William B. Rubenstein (Nan B. Hunter* of counsel), for American Civil Liberties Union; and *Evan Wolfson* and Paula *Ettelbrick* for Lambda Legal Defense and Education Fund, Inc., on behalf of Gay Men's Health Crisis, Inc. and others, intervenors-appellants.

*Robert H. Gordon* of counsel *(Frank J. Barbaro,* attorney), for Janet Goodman, intervenor-appellant.

*Jane S. Earle* of counsel *(Leonard Koerner* and *Phyllis Arnold* with her on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for City of New York, *amicus curiae.*

*Samuel J. Himmelstein* of counsel *(Rochelle K. Benjamin, William Griben* and *Kevin R. McConnell* with him on the brief; *Himmelstein & McConnell,* attorneys), for NYS Tenant and Neighborhood Coalition Inc. and others, *amici curiae.*

*Kleo J. King* for Eastern Paralyzed Veterans Association, *amicus curiae.*

*William E. Rosen* of counsel *(Horing & Welikson,* attorneys), for Community Housing Improvement Program, *amicus curiae.*

*Jody Leight* for Jewish Association for Services for the Aged, *amicus curiae.*

*Carol S. Keenan* of counsel *(Klein & Keenan,* and *Ronald A. Zumbrun, Edward J. Connor, Jr.,* and *R. S. Radford,* attorneys), for Pacific Legal Foundation, *amicus curiae.*

## OPINION OF THE COURT

Ross, J. P.

The primary issue on these appeals is whether the IAS court properly enjoined the implementation of the emergency rule and subsequent amendment to the State Division of Housing and Community Renewal's permanent regulations, adopted in order to conform and/or broaden the administrative regulations governing lease succession rights and antieviction protections, under the State and City of New York rent control and rent stabilization systems, in accordance with the Court of Appeals decision in *Braschi v Stahl Assocs. Co.* (74 NY2d 201).

In *Braschi v Stahl Assocs. Co. (supra),* the court held that the term "family" as used in section 2204.6 (d) of the New York City Rent and Eviction Regulations (9 NYCRR 2204.6 [d]), includes "two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence" (74 NY2d, at 211). On November 9, 1989, the State Division of Housing and Community Renewal (DHCR) began the process of amending the four sets of administrative regulations under its administration,[1] to provide for leasehold succession rights in accordance with the broad definition of the term "family" set out in *Braschi v Stahl Assocs. Co. (supra)* by promulgating an emergency rule applicable to all four sets of regulations. The emergency rule broadened the definition of family members entitled to succession rights to include, in addition to those traditional relations previously named, those individuals residing in the housing accommodation, with the tenant of record, as a primary residence, who can prove emotional and financial commitment and interdependence between themselves and the tenant of record. The rule lists the following eight factors to be consid-

---

1. (1) The State Rent and Eviction Regulations (9 NYCRR parts 2100-2109 [rent control outside of New York City]); (2) the New York City Rent and Eviction Regulations (9 NYCRR parts 2200-2210 [rent control within New York City]); (3) the Emergency Tenant Protection Regulations (9 NYCRR parts 2500-2510 [rent stabilization outside New York City]); (4) the Rent Stabilization Code (9 NYCRR parts 2520-2530 [rent stabilization within New York City]); *see,* McKinney's Uncons Laws of NY, Book 65 (§§ 8581-8700).

ered in determining whether the requisite emotional and financial commitment and interdependence existed: length of relationship; sharing of expenses; intermingling of finances; engaging in family-type activities; formalization of legal obligations and responsibilities between the two parties; holding themselves out as family members through words or acts; regular performance of family functions; and any other pattern of behavior which evidences the intention of creating a long-term, emotionally committed relationship. Whereas, prior rent stabilization regulations provided for succession either, where the family member of the named tenant has resided in the housing accommodation as a primary resident from the inception of the tenancy or commencement of the relationship, and the named tenant vacates the premises (Rent Stabilization Code [9 NYCRR] § 2523.5 [b] [1]) or, where a family member has resided with such tenant in the housing accommodation as a primary resident for a period of no less than two years immediately prior to the death of the tenant (9 NYCRR 2523.5 [b] [2]),[2] the emergency rule eliminated the distinction between the tenant of record's death and the tenant of record's departure. In either case, the family member would succeed to the rights of the tenant of record upon the tenant of record's permanent vacatur of the housing accommodation provided the family member resided with the tenant of record as a primary resident, either for not less than two years (one year in the case of senior citizens [62 years or older] and disabled persons) or from the inception of the tenancy or commencement of the relationship (if the tenancy or relationship were less than two years, or one year old, as the case may be).

Plaintiffs commenced the within declaratory judgment action seeking a declaration that the emergency rule is null and void, ultra vires and unconstitutional, as a taking of property without just compensation. The complaint also alleges that the rule violated Real Property Law § 226-b which regulates the assignment of leases; Real Property Law § 235-f which

---

2. The above-cited regulations were enacted in May 1987 in order to conform the Rent Stabilization Law to the Rent Control Law, which prohibited the eviction of an occupant of a rent-controlled housing accommodation who had been living with the tenant, and was either a surviving spouse or some other member of the deceased tenant's family. (State Rent and Eviction Regulations § 56 [4], renum 9 NYCRR 2104.6 [d].) The rent control regulations for the City of New York contained the same provision (9 NYCRR 2204.6 [d]). This court upheld the rent stabilization regulations concerning succession rights in *Festa v Leshen* (145 AD2d 49).

creates a right of occupancy but not leasehold rights for roommates; Domestic Relations Law § 11 which sets out the requirements and means for the solemnization of a marriage; and the administrative limitations in the Omnibus Housing Act of 1983, and the State Administrative Procedure Act.

By order to show cause dated November 13, 1989, plaintiffs moved in Supreme Court, Albany County, for a preliminary injunction enjoining the implementation of the emergency rule. An order to show cause was granted, which restrained the DHCR from "implementing or effectuating said Emergency Rule, or in any other manner promulgating, issuing, implementing or effectuating the terms, conditions or requirements thereof," but made the motion returnable in Supreme Court, New York County.

On November 15, 1989, counsel for the plaintiffs and the DHCR entered into a stipulation which provided that the November 13, 1989 order to show cause would not be construed to preclude the DHCR from taking ministerial actions necessary to comply with the procedures required for the promulgation of the regulatory amendments, which are the subject of this action, such as the filing of required regulatory impact statements and regulatory flexibility analyses with the Secretary of State. On December 13, 1989, the New York County IAS court heard argument, and again extended the TRO pending determination of the preliminary injunction motion. During oral argument on the motion, the court was informed that the DHCR was in the process of promulgating permanent regulations and had already sent out notices that a public hearing was scheduled for January 22, 1990.

On February 7, 1990, the DHCR filed with the Secretary of State for a 60-day extension of the emergency rule, and on March 20, 1990 the DHCR filed permanent regulations with the Secretary of State, identical in substance to the emergency rule. Plaintiffs, by order to show cause, moved for a preliminary injunction enjoining the implementation of the permanent regulations on the same grounds used to attack the emergency regulation, and for leave to file a supplemental complaint to assert causes of action against the permanent regulations. Plaintiffs also served a demand for compliance with CPLR 5104, claiming that the promulgation of the permanent regulations violated the original TRO.

In the interim, on March 19, 1990 the defendant-intervenors moved by order to show cause to vacate the TRO on the

ground that this court's March 13, 1990 decision in *East 10th St. Assocs. v Estate of Goldstein* (154 AD2d 142) established conclusively the lack of plaintiff's likelihood of success on the merits. In *East 10th St. Assocs. v Estate of Goldstein (supra)*, this court held that the extended definition of "family" set out in *Braschi v Stahl Assocs. Co. (supra)* and applied therein to a rent-controlled apartment, also controlled in the case of a rent-stabilized apartment in New York City, since "there is no significant distinction between the two regulatory schemes which would mandate a different definition of [the term] 'family' " *(East 10th St. Assocs. v Estate of Goldstein, supra, at 145)*.

■ On April 4, 1990, the permanent regulations were published effective immediately. The IAS court, in an order entered April 10, 1990, provided that the TRO imposed by the Supreme Court, Albany County, on November 13, 1989 was extended to cover the permanent regulations, pending the court's determination of the plaintiff's motion for a preliminary injunction. The DHCR appealed. Plaintiffs moved in this court for an order dismissing the appeal from the April 20, 1990 order on the ground that it was a nonappealable temporary restraining order. Alternatively, plaintiffs sought to vacate the CPLR 5519 (a) (1) stay. By order entered May 15, 1990 this court, *sua sponte,* deemed the order entered April 20, 1990 as one which granted a preliminary injunction, and provided that the statutory stay would be vacated unless the appeal was perfected for the October 1990 term of this court. The plaintiffs' challenge to the regulations is based to a large extent, upon their contentions that the promulgation of the challenged regulations is beyond the scope of the DCHR's rule-making authority, and that the regulations are contrary to the expressed legislative intention and policy, in the areas of lease succession rights, and domestic relations.[3] We disagree.

For the following reasons, we reverse the order entered April 20, 1990, and vacate the preliminary injunction enjoin-

---

3. We have a most unusual situation in that at least 10 briefs (4 of them by *amicus curiae*) have been submitted with reference to the merits of the permanent regulations, as well as four briefs with reference to the question of contempt, where the IAS court is yet to write a single sentence on either issue. Nevertheless, we must accept appeal No. 1 (rather than dismiss same), as in our previous denial of plaintiffs' motion to dismiss that appeal, we *sua sponte* deemed that appeal to be from a grant of a preliminary injunction, which was the eventual result of repeated extensions of the TRO.

ing the implementation of the permanent regulations, and decline to review the denial of the order to show cause seeking to hold the respondent Commissioner in contempt.

Fundamental to a party's entitlement to a preliminary injunction is a demonstration that the party has a likelihood of success on the merits. *(Grant Co. v Srogi,* 52 NY2d 496, 517.) We are guided here, as we were in *Festa v Leshen* (145 AD2d 49, 55), by the standard of judicial review set forth in *Ostrer v Schenck* (41 NY2d 782, 786): "The function of a reviewing court is a limited one. The challenger of a regulation must establish that the regulation 'is so lacking in reason for its promulgation that it is essentially arbitrary.' " As this court has recognized in the past, an administrative agency may not, in the exercise of its rule-making authority, promulgate a regulation out of harmony with the plain meaning of statutory language. *(Festa v Leshen, supra,* at 55; *see, Matter of Lower Manhattan Loft Tenants v New York City Loft Bd.,* 104 AD2d 223, 225, *affd* 66 NY2d 298; *see also, Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471, 480-481; *Matter of Jones v Berman,* 37 NY2d 42, 53.) "Similarly, an agency may not, in excess of its lawfully delegated authority, promulgate rules and regulations for application to situations not within the intendment of the statute." *(Festa v Leshen, supra,* at 55; *see Boreali v Axelrod,* 71 NY2d 1; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 595.)

This court has specifically stated that the succession provisions to which the challenged regulations were added are " 'remedial in nature' " and " 'should be liberally construed to carry out the reform intended and spread its beneficial effects as widely as possible' ". *(Festa v Leshen, supra,* at 56, quoting *Lesser v Park 65 Realty Corp.,* 140 AD2d 169, 173.) In *Festa v Leshen (supra,* at 56), this court held that the DHCR acted rationally and within the scope of its lawfully delegated authority in promulgating the Rent Stabilization Code amendments, which provided that relatives who reside with the named tenant may succeed to the tenant's lease rights, upon the tenant's death or abandonment of the dwelling. It was therein noted that the DHCR was delegated the authority, by the Legislature, to amend the Rent Stabilization Code and to adopt a code which, in general, protects tenants and the public interest *(supra,* 145 AD2d, at 56). We specifically found that the regulations challenged in *Festa v Leshen (supra)* were enacted in a legitimate exercise of its authority, in order to

avoid a "grievous harm" to the family members of the tenants of record, in rent-stabilized apartments, who die or abandon the family dwelling. We stated: "The challenged regulations reflect DHCR's measured response to the *Sullivan* decision (66 NY2d 489, *supra),* which had the potential to expose spouses and children to summary eviction with little or no hope of finding affordable housing in New York City. Such a situation surely posed at least as serious a threat 'to the public health, safety and general welfare' (Administrative Code § YY51-1.0) as the eviction of the named tenant with whom they resided. The succession provisions adopted by DHCR, designed to prevent just such a situation, thus effectively advanced the purposes for which the Rent Stabilization Law was enacted. Indeed, as this court recognized in *Lesser v Park 65 Realty Corp. (supra,* 140 AD2d, at 173), the succession provisions 'were included in the new Code to prevent the grievous harm that would ensue from the wholesale eviction of family members which would otherwise be permitted under the law as set forth in the *Sullivan* decision *(supra)* and to address the inadequacies in this area of the law in light of its history.' " (145 AD2d, at 56-57.)

In *Braschi v Stahl Assocs. Co. (supra),* the Court of Appeals extended the same noneviction protection already afforded spouses and members of the named tenant's "family" under the New York City Rent and Eviction Regulations to "two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence." *(Braschi v Stahl Assocs. Co., supra,* at 211.) In *East 10th St. Assocs. v Estate of Goldstein* (154 AD2d 142, *supra),* this court found the *Braschi* decision *(supra)* to be controlling precedent which required that the *Braschi* definition of family be applied in rent stabilization cases. Apart from the fact that rent stabilization is generally acknowledged as a "less onerous" system than rent control *(Sullivan v Brevard Assocs.,* 66 NY2d 489, 494), this court noted that "there is no significant distinction between the two regulatory schemes which would mandate a different definition of 'family' " (154 AD2d, at 145). We noted as well that the court in *Braschi (supra)* specifically placed its statement expanding the definition of the word "family", " '[i]n the context of eviction', *not* 'in the context of eviction from a rent controlled apartment' ". (154 AD2d, at 145.) We then concluded that "[i]t would be anomalous to hold that a life partner could be a valid family member for the purpose of protection from evic-

tion from a rent-controlled apartment but not a valid family member insofar as eviction from a rent-stabilized apartment is concerned" *(supra,* at 145).

Inasmuch as the challenged regulations represent a codification of the Court of Appeals decision in *Braschi v Stahl Assocs. Co. (supra)* and of this court's decision in *East 10th St. Assocs. v Estate of Goldstein (supra)* and are a response to substantially the same public needs as the succession provisions approved in *Festa v Leshen (supra),* there is little likelihood that plaintiffs will succeed on the merits of their challenge to the regulations on the grounds that their promulgation violates the policy of the statute which created the DHCR and exceeds the delegated authority of the agency. It is clear also that plaintiffs' challenge based upon the provision of the Omnibus Housing Act of 1983 (L 1983, ch 403, § 9) which provides that no provision of the Rent Stabilization Code "shall impair or diminish any right or remedy granted to any party by this law or any other provision of law" will not ultimately succeed.

This court in *Festa v Leshen (supra,* at 60-61) held that the provision was not a bar to the creation of succession rights for traditional family members. We stated that the fact "[t]hat no statute or regulation had previously restricted the contractual rights of landlords to evict the family members of a tenant who had died or vacated rent-stabilized premises does not constitute the granting of a right. Rights are not conferred by the absence of a regulation." (145 AD2d, at 61.) We further noted that "by delegating to DHCR the authority to adopt an amendment to the Code which 'protects tenants and the public interest' (Administrative Code § 26-511 [c] [1], formerly § YY51-6.0 [c] [1]), the Legislature clearly provided the agency with a broad mandate, which would inevitably require some changes in the legal relationship between landlords and tenants. The statutory proscription against the impairment of existing rights was intended to assure that any such changes be not inconsistent with the Rent Stabilization Law or any other law." *(Festa v Leshen, supra,* at 61.) As with the succession provisions at issue in *Festa v Leshen (supra)* the challenged provisions satisfy this requirement. By responding to the continuing shortage of low- and middle-income housing units available, the rise in instances of individuals "doubling-up" and tenants being forced into a homeless situation due to unaffordable rents, the regulations clearly comport with the broad mandate provided the DHCR by the Legislature to

"protect * * * tenants and the public interest". Since the new regulations incorporate the *Braschi* definition of "family" into the existing regulatory scheme, they do not conflict with Real Property Law § 226-b, which governs the assignment of leases, or with Real Property Law § 235-f (2), which makes it "unlawful for a landlord to restrict occupancy of residential premises, by express lease terms or otherwise, to a tenant or tenants or to such tenants and immediate family". The regulations deal with succession to leasehold rights, and with "family members" whether or not related by blood or law who have always treated the apartment as their family home, as opposed to "roommates". In *Braschi v Stahl Assocs. Co. (supra,* at 212) the court noted that the approach mandated by its decision would "foster the transition from rent control to rent stabilization by drawing a distinction between those individuals who are, in fact, genuine family members, and those who are mere roommates *(see,* Real Property Law § 235-f; *Yorkshire Towers Co. v Harpster,* 134 Misc 2d 384) or newly discovered relatives hoping to inherit the rent-controlled apartment after the existing tenant's death."

The argument that the regulations conflict with Domestic Relations Law § 11 requiring solemnization of a marriage is meritless, as the regulations do not remotely attempt to equate the special relationship defined therein as spousal, and specifically distinguish "husband" and "wife" from that relationship. The regulations do not attempt to confer any other protection or privilege than the protection from eviction upon the death or departure of the tenant of record.

Plaintiffs broadly contend that promulgation of the permanent regulation violates the doctrine of separation of powers, arguing that the DHCR overstepped the boundary of proper administrative rule making and entered the realm of legislative policy making. The basis for plaintiff's claim is that since 1986 there have been approximately 27 bills introduced in the State Legislature concerning succession by "family members" and individuals "residing with" the tenant of record to the tenant's lease rights in rent-regulated apartments, none of which were passed. Plaintiffs view the presentation and debate of such bills without the passage of any legislation as a tacit pronouncement of policy by the Legislature on the subject covered by the challenged regulations. Plaintiffs submit no authority for such argument.

While the line between administrative rule making and legislative policy making has been described as difficult to

define in some cases *(Boreali v Axelrod,* 71 NY2d 1, 11), such is not the case here. The court in *Boreali* invalidated a comprehensive Public Health Council (PHC) code regulating tobacco smoking in areas open to the public, finding on the basis of four "coalescing circumstances" that the "difficult-to-define line between administrative rule-making and legislative policy-making has been transgressed" *(supra,* 71 NY2d, at 11) in that the regulations were enacted without legislative guidance in an area, where the Legislature had tried and failed to reach an agreement, and were riddled with exceptions based solely on economic and social concerns. By contrast, the regulations herein were enacted in response to the pronouncements of the Court of Appeals, in an area within the particular expertise of the agency and do not contain any exceptions but, rather, uniformly advance the policies of the regulatory scheme according to the mandate given the agency by the Legislature.

Plaintiffs, for the first time on appeal, argue that the permanent regulations are impermissibly vague because they provide no criteria for determining when a nontraditional relationship commences. The standards for evaluating vagueness were enunciated in *Grayned v City of Rockford* (408 US 104, 108-109): "Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application".

These standards however, are not to be applied mechanically. "The degree of vagueness that the Constitution tolerates —as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow" *(Hoffman Estates v Flipside, Hoffman Estates,* 455 US 489, 498).

Here, the challenged regulations set out eight specified factors to be employed in determining whether a family relationship exists. These factors are sufficiently definite to

give a person of "ordinary intelligence" a "reasonable opportunity" to make that determination. The question of when such a relationship commences is, contrary to plaintiff's view, a relatively straightforward factual one, which can be determined in terms of those same eight factors. Aspects of the relationship from the date intermingling and joint ownership of assets began, to when the two individuals began a close relationship with each other's relatives can be examined to determine when the "family relationship" truly commenced. To the extent that the regulations codify the *Braschi* decision they draw "a distinction between those individuals who are, in fact, genuine family members, and those who are mere roommates * * * or newly discovered relatives hoping to inherit the rent-controlled [or rent-stabilized] apartment after the existing tenant's death [or departure]" *(see, Braschi v Stahl Assocs. Co., supra,* at 212), and provide definite means with which to draw that distinction.[4]

Plaintiffs advance various constitutional challenges to the regulations all based on the contention that the regulations effect unconstitutional physical and/or regulatory takings which effectively deprive the landlord of the use of the property indefinitely, without just compensation. Plaintiffs argue that the regulations violate the constitutional guarantee against the taking of private property for public use without just compensation by "removing all control from the landlord and placing permanent occupancy, dominion and control over the landlord's property with the tenant". This conclusion is based upon the plaintiffs' view that the regulations permit "permanent and multi-generational occupancy by strangers."

■ The New York State Court of Appeals and the United States Supreme Court have upheld rent-control and similar regulation of housing conditions and other aspects of the landlord-tenant relationship *(see, Bowles v Willingham,* 321 US 503, 517-518; *Loab Estates v Druhe,* 300 NY 176, 180; *Levy Leasing Co. v Siegel,* 258 US 242; *Block v Hirsh,* 256 US 135). The challenged regulations do not fundamentally change the nature of the rent control and rent stabilizations systems so as to authorize "the permanent occupation of the landlord's

---

4. The argument advanced by plaintiffs that there is no basis upon which to protect family members of tenants of record who abandon the apartment rather than die is meritless. *Matter of Herzog v Joy* (53 NY2d 821, *affg* 74 AD2d 372), *Festa v Leshen (supra)* and *Braschi (supra)* make clear that the distinction between death and abandonment of the premises by the tenant of record, has itself been abandoned by the courts.

property by a third party" of the sort, which traditionally, has been held to be a "taking" *(see, Loretto v Teleprompter Manhattan CATV Corp.,* 458 US 419, 440, 441). These regulations expand the definition of those individuals entitled to succeed to the tenant-of-record's lease rights by virtue of their familial relationship with the tenant. Like rent control and other regulations that have been upheld by this court, the Court of Appeals and the United States Supreme Court, the regulations herein involve "restrictions imposed on existing tenancies where the landlords had voluntarily put their properties to use for residential housing" *(see, Seawall Assocs. v City of New York,* 74 NY2d 92, 105, *cert denied* — US —, 110 S Ct 500). Thus they are to be distinguished from the regulations at issue in *Seawall Assocs. v City of New York (supra)* which were found by the Court of Appeals to force owners to subject their properties to a use which they neither planned nor desired *(Seawall Assocs. v City of New York, supra,* at 105),[5] and to offer their properties for rent as SRO units to persons with whom they had no existing landlord-tenant relationship. The plaintiffs' fear that the nature of the nontraditional relationship, as defined in the regulations, will permit "permanent and multi-generational occupancy by strangers" is an unfounded one, apparently based, in part at least, on the assumption that the regulations allow room for fraud. The permanency of the occupancy by the nontraditional family member is no greater than that of a traditional family member. Moreover, the definition of the relationship provided in the regulation is not so nonspecific or general as to allow for abuse. The successors to the tenant's lease rights must demonstrate a close, "familial" connection to the tenant and to the apartment. Thus such individuals are not mere "third-parties" or "strangers" to the tenancy.

Plaintiffs argument that the regulations effect an uncompensated regulatory taking is based upon the contention that the broadening of the definition of those entitled to succession rights denies the landlords the economically viable use of the properties, by effectively extinguishing the landlords expectation of a residual or reversionary interest in the apartments. According to the plaintiffs this results because the regulations

---

5. The statute struck down by the Court of Appeals in *Seawall (supra)* imposed a moratorium on the demolition or conversion of structures containing SRO (single-room occupancy) units and required owners of SRO properties to rehabilitate all vacant units and offer them for rent. The statute imposed substantial monetary penalties for noncompliance.

permit succession to a broad indefinite class of people predicated upon two years of occupancy or even less. As has already been discussed in connection with the "vagueness" argument advanced by the plaintiffs, it is clear that the regulations specifically define a narrow class of individuals who are entitled to succession.

The regulations here at issue are distinguishable from those involved in *520 E. 81st St. Assocs. v Lenox Hill Hosp.* (157 AD2d 138, *appeal withdrawn* 76 NY2d 851). In *520 E. 81st St. Assocs. v Lenox Hill Hosp. (supra)*, the regulations at issue provided an exception to the nonprimary residence exemption in the Rent Stabilization Law where a not-for-profit hospital is the lease's named tenant (L 1984, ch 940). This court found that because Lenox Hill Hospital had been in existence since June 29, 1918, and showed no signs of ceasing operations, the landlord was "effectively precluded from regaining possession of its property" primarily because Lenox Hill could use the apartments as a dormitory "in perpetuity" *(supra, at 146, 147)*. Moreover this court found that by providing the hospital with a virtual fee interest in the property, the regulations as applied would increase "the dislocation of long-term tenants, thereby contravening the purpose of rent stabilization, by requiring Lenox Hill to remove long-term occupants if they terminate their employment with it" *(supra, at 149)*. We stated that the policy of promoting better health care should not be "furthered by interpretating the Rent Stabilization Law so as to exacerbate the very housing emergency which rent stabilization was enacted to address" *(supra, at 150)*.

The occupancy herein is necessarily limited by the lifetime of the succeeding "family member", which is no greater than that of any other traditional relation entitled to succession prior to *Braschi (supra)*. The possession and use of the property in perpetuity is simply not a potential result herein. The landlord is not required to issue renewal leases to an institution with perpetual existence, but rather to natural persons, whose primary residence was already in the landlord's building. The plaintiffs have not shown that they will be able to demonstrate that the regulations prevent them from obtaining a reasonable return on their property. Moreover, unlike the regulations in *520 E. 81st St. Assocs. (supra)* the regulations here at issue advance the intended purposes of the rent stabilization and rent control succession provisions—to prevent the eviction of individuals with substantial ties to their home-apartment and to the former tenant of record. Thus,

since the plaintiffs will not be able to demonstrate that the regulations do not substantially advance a legitimate State interest or that they deny landlords economically viable use of their property *(see, Seawall Assocs. v City of New York, supra,* at 107)*,* plaintiffs' challenge based upon the theory that the regulations constitute a regulatory taking will also necessarily fail.

Plaintiffs, though they have strenuously and competently argued, have failed to demonstrate that they have a likelihood to succeed on the merits, in their challenge to the regulations. They are, therefore, not entitled to the injunctive relief that they were granted below *(Grant Co. v Srogi,* 52 NY2d 496, *supra).*

Accordingly, the order of Supreme Court, New York County (Irma Vidal Santaella, J.), entered April 20, 1990, and deemed as one granting a preliminary injunction, is reversed, on the law, the facts and in the exercise of discretion, and the injunction vacated, with costs. We decline to reach the plaintiffs' appeal from the order, entered April 10, 1990, which denied their application for an order holding the defendant Commissioner in contempt for allegedly violating the original temporary restraining order made with respect to the emergency rule, and dismiss that appeal as moot, without costs.

MILONAS, ASCH and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered April 20, 1990, reversed, on the law, the facts and in the exercise of discretion, and the injunction vacated, with costs. Appeal from order of said court entered on April 10, 1990, is dismissed as moot, without costs.