*812 OPINION OF THE COURT
Phyllis Gangel-Jacob, J.
More or less continuously since the early 1940’s the City of New York has had in place one or more plans of rent control which have affected, at one time or the other, much of its rental housing stock. As New Yorkers know, the present regulatory programs — the older New York City Rent and Rehabilitation Law (Administrative Code of City of NY, tit 26, ch 3) whose applicability is diminishing over time and the newer and now more extensively applied regulation effected through the Rent Stabilization Law of 1969 (Administrative Code of City of NY, tit 26, ch 4), both as now amended and extended — cover hundreds of thousands of units. This case, however, involves only a five-story, 23-foot-wide brownstone located in central Harlem.
The plaintiffs are the owner of the building and her children, each of whom now occupies a different part of the building. They are Joan Dawson, who bought the building and moved into a unit located in it in 1983, and her adult children, Paul Dawson and Tandra Dawson, each of whom now occupies a separate floor in the building. When the building was purchased it contained units subject to rent control; and the complaint alleges that there are still in occupancy two unrelated (and unnamed and unjoined) tenants each of whom has a rent-controlled unit which each has occupied for more than 20 years.
The plaintiffs do not question that the tenants would be entitled to the protective benefits set out in section 26-408 (b) (1) of the Rent and Rehabilitation Law and section 2204.5 (a) of the New York City Rent and Eviction Regulations (9 NYCRR parts 2200-2210) if the parts of the sections which grant those benefits are constitutional; and so they have eschewed seeking any relief through the administrative channels of the New York State Division of Housing and Community Renewal (D.H.C.R.) and seek instead a judgment which declares that those sections, on their face, violate various provisions of the Federal and State Constitutions. After some stipulations to substitutions, the parties defendant are the Commissioner of the D.H.C.R. and the City of New York. All the parties have cross-moved for summary judgment.
The Rent and Rehabilitation Law and Rent and Eviction Regulations limit the amount of rent which may be charged for the premises and further regulate the relationship be *813 tween the owner and the controlled tenant by creating a statutory tenancy which can only be terminated for nonpayment, unless the owner has secured a certificate of eviction from the D.H.C.R. The D.H.C.R. may grant a certificate of eviction only pursuant to statute, after a hearing where affected tenants have an opportunity to participate and subject to administrative appeal and ultimate court review by CPLR article 78 proceedings.
The plaintiffs allege they would have proceeded to seek a certificate of eviction for each of the two tenant occupied units in the building under the general provisions of section 26-408 (b) (1) of the Rent and Rehabilitation Law and section 2204.5 (a) of the City’s Rent and Eviction Regulations. Those sections generally direct that a certificate of eviction can be issued where the "landlord seeks in good faith to recover possession of a housing accommodation because of immediate and compelling necessity for his or her own personal use and occupancy, or for the use and occupancy of his or her immediate family”.
The plaintiff’s problem is this: In 1984 these sections were amended to provide that certificates of eviction would not be issued on the landlord’s claim of necessity for personal use and occupancy, where the tenants whose eviction was sought on that ground "has been a tenant in a housing accommodation in that building for 20 years or more.” (Id.) The sections also bar certificates of eviction where the tenant is 62 years of age or older or suffers certain impairments which prevent the tenant from engaging in substantial gainful employment.
Plaintiffs’ verified complaint alleges four causes of action. The first claims that the two sections constitute a physical taking of private property without just compensation in violation of the Fifth and Fourteenth Amendments of the US Constitution and article I, §§ 6 and 7 of the NY Constitution since they fail to provide compensation to an owner when absolutely depriving him or her of the right of possession. The declaration sought is that the challenged provisions on their face constitute an unconstitutional physical taking of private property without just compensation and are void.
The second cause of action alleges that the challenged sections force plaintiffs to continue in the rental business against their will and to privately bear a social burden which should be borne by the public as a whole; that no legitimate State interest is being advanced and consequently there is a *814 regulatory taking of private property without just compensation in violation of the Fifth Amendment of the US Constitution and article I, § 7 of the NY Constitution. The declaration sought is that the statute and regulation constitute an unconstitutional regulatory taking of private property without just compensation and on their face are void.
The third cause of action alleges that the absolute prohibition against the eviction of long-term tenants for owner occupancy reasons compels an owner to remain in the rental business against his or her will and thus constitutes a violation of the Involuntary Servitude Clause of the Thirteenth Amendment of the US Constitution and as such the statute and the regulation should be declared null and void on their face as resulting in involuntary servitude in violation of the Thirteenth Amendment.
The fourth cause of action alleges that these compulsory rental provisions deprive plaintiffs of their liberty and property due process rights, under the Fourteenth Amendment of the US Constitution and article I, § 6 of the NY Constitution, warranting a declaration that the contested provisions are null and void. All causes of action allege that there exists a justiciable controversy.
In their answer Commissioner Higgins (now Aponte) and D.H.C.R. set forth four affirmative defenses including failure to state a cause of action; failure to exhaust administrative remedies; lack of jurisdiction by the court because the cause of action is not ripe for adjudication; and that the Commissioner acted pursuant to statutory authority in accordance with lawful procedure which was not arbitrary or capricious. The City of New York adopted the answer of defendant Michetti which, inter alia, denies the material allegations of the complaint.
The record in this case is obviously skimpy, and the issues are presented in extremely abstract and stark terms. It seems clear that plaintiffs have attempted to structure their attack so as to come within the reasoning of Seawall Assocs. v City of New York (74 NY2d 92, cert denied 493 US 976 [1989]), and the authorities cited therein. After carefully rereading the Seawall opinion and the other authorities cited, I conclude against the plaintiffs.
I have carefully considered all of the plaintiffs’ claims. Nothing that the plaintiffs allege rises to a violation of the Thirteenth Amendment. That great clause which confirmed *815 the abolition of slavery as it had existed in some of the United States, and has since stood as a bulwark against personal servitude or peonage is not at all involved in the present case. This case involves only property relations; and even if these tenant protections should be characterized as resulting in the uncompensated seizure of the plaintiffs’ property, there is nothing about the way those protections operate that results in legally enforceable personal servitude for the plaintiffs or detracts from their personal status, dignity and freedom. Nothing in Seawall suggests the contrary. (See also, Grossman v Baumgartner, 17 NY2d 345 [1966]; Sobel v Higgins, 151 Misc 2d 876 [Sup Ct, NY County 1991], appeal transferred to App Div 79 NY2d 822 [1991].)
The distinctions between the single-room occupancy (SRO) moratorium and rent-up statute complained of in Seawall (supra) and the provisions protecting existing tenants brought under attack in the present case are decisive; they underline the constitutionality of the 20-year tenant protections brought into question here as against this facial attack. A similar facial attack on related certificate of evictions provisions in the Rent and Rehabilitation Law on the ground that such provisions unconstitutionally prohibited the plaintiff in that case from going out of the rental business was dismissed (Sobel v Higgins, 151 Misc 2d 876 [Sup Ct, NY County 1991], appeal transferred to App Div 79 NY2d 822 [1991], supra).
In this case the tenant protections are predicated on the preexisting nexus between the owners and the tenants and do not involve, as did the Seawall case (supra) the obligation to rent-up vacancies. That is an important distinction, as Judge Hancock, Jr., indicated in the writing for the majority in Seawall (74 NY2d, at 112, n 11, supra): "As we have already discussed, government has considerable latitude in regulating landlord-tenant relationships to preclude eviction in hardship, emergency and rent-control cases, and both this court and the Supreme Court [of the United States] have upheld such efforts.” (Emphasis added.)
Judge Hancock, Jr., was here referring to language earlier in his opinion, where he said that "rent-control and other landlord-tenant regulations * * * involved restrictions imposed on existing tenancies where the landlords had voluntarily put their properties to use for residential housing.” (Supra, at 105 [emphasis added].)
It is this same distinction which makes it clear that Loretto *816 v Teleprompter Manhattan CATV Corp. (458 US 419 [1982]) is not applicable. These long-term tenants were not quartered upon the plaintiffs, as plaintiffs suggest. The tenants were in possession for more than a decade before the plaintiffs came on the scene; and the plaintiffs knowingly bought into the highly regulated business of being a landowner. The rights and protections afforded these tenants existed in 1983 when plaintiffs acquired the building. If plaintiffs believed in 1983 that the existence of these statutory tenancies reduced the attractiveness of the investment, they presumably could take comfort that such reduced attractiveness lowered the purchase price. The very recent Supreme Court decision in Yee v Escondido (503 US —, 112 S Ct 1522 [Apr. 1, 1992]) is in point; it holds that an indefinite tenancy created incident to a mobile home pad regulation, even where an interest created is transferable by the tenant, does not amount to a physical taking under Loretto.
The last question is whether this protection for tenants of 20 years or more against removal to meet a landlord’s desires for personal use amounts to an impermissible over-regulation or "regulatory taking”. Seawall (supra) suggests a two-pronged test looking, first, to the impact of the regulations on the landlord’s property rights and, second, to the public purpose served by the regulation. I believe the long-term tenant protections accorded by the 1984 amendments easily pass muster on each prong of this test.
First, the regulatory burden simply regulates the terms under which tenants can be evicted in accordance with the public interest. The law says that the plaintiffs cannot involuntarily evict the protected tenants, in order to liquidate the owner-tenant relationship the plaintiffs voluntarily bought into. Short of involuntary eviction or harassment, they are free to make any arrangement acceptable to these tenants or to await the turn of events which may result in these tenants’ leaving without the plaintiffs’ intervention.
Second, there is no issue in this case of the amount of the rental reserved or whether it is being timely paid. Such questions cannot be raised in these proceedings, and one can presume that, if that were the nub of the issue, the plaintiffs would have proceeded along the administrative path and resort to article 78 rather than making this unusual facial attack.
Finally, this tenant protective provision effectively aims at a *817 justified over-all public purpose of providing adequate housing. The legislative Bill Jacket which comments on this protective legislation sets forth the legislative finding that stability of tenure is linked in this case with protection against the most serious kinds of unnecessary psychological and social hardship. The habits which contribute to the effective use of housing accommodations (and so to their habitability) are especially difficult to acquire anew for all three of the classes protected by this legislation. Elderly and handicapped persons encounter these difficulties in a way that is obvious to all, and which one can observe most dramatically in the displaced elderly and mentally disturbed victims of homelessness. The presence of such dislocated persons on our streets should have taught the City the value of the SRO housing it allowed to disappear. The tenant protective provision here in question goes to the heart of preserving to the extent possible those same values of stability when they have taken on the deep lineaments of familiarity through more than two decades of innocent use.
Recent scholarly opinion has begun to develop the argument that rent control/stabilization is fundamentally aimed at preserving stability of tenure. Price regulation, on this point of view, is a means of assuring such stability and preventing dislocation. (See, Berger, Home Is Where The Heart Is: A Brief Reply to Professor Epstein, 54 Brook L Rev 1239; Radin, Residential Rent Control, 15 Phil & Pub Affairs 350 [1986].)
The Legislature is well within its purview in balancing humaneness, avoidance of dislocation and protection of the weaker party to the landowner-tenant transaction against the maximum possible return on property or even the personal choice of the owner to use that particular property. There may be much to be said about the judgment resulting from the balance of these factors which is embodied in the provision attacked, but that discussion is a discussion about legislative policies and not a legal discussion about a taking of the plaintiffs’ property.
The protections accorded to existing tenancies by this legislation are not affected by the fact that the two tenancies in question are characterized in the plaintiffs’ complaint as SRO units. The mere fact that Seawall (supra) involved an attempt by the City to deal with the SRO problems which were ultimately held to have gone over the line and therefore an impermissible taking of property, in no way detracts from the *818 justifiable exertion of legislative power at issue which protects SRO’s as well as other tenancies.
Nor is Hall v City of Santa Barbara (833 F2d 1270 [9th Cir 1987], cert denied 485 US 490) in point. First the authority of that case has now been reduced by the recent Supreme Court decision in Yee v Escondido (503 US —, 112 S Ct 1522 [Apr. 1, 1992], supra) where the Supreme Court has held that a compelled tenancy, even where transferable, does not amount to a physical taking and where it also held that the "regulatory taking” question was not adequately raised. Azul Pacifico v City of Los Angeles (948 F2d 575 [9th Cir 1991]) does deal with the regulatory taking point. It concludes that in cases where the monetary value of the unit is seen as transferred to the tenant because the tenant is permitted to sell the space in question and capture a rental premium which the court found to exist, there is a regulatory taking. There is no way to know if such a market rental premium exists in this case, and in any event the rights accorded to the protected tenants cannot legally be transferred by them, but must ultimately be surrendered to the owner. Nor do we know what the Supreme Court will do with the Azul Pacifico decision.
The challenged provisions substantially advance legitimate State interests (see, Seawall, supra; Keystone Bituminous Coal Assn. v DeBenedictis, 480 US 470), and were enacted and promulgated as "a tacit recognition of the devastating impact that evictions can have on such [long-term] tenants and their communities. As the New York Assembly memorandum in support of the legislation explained: 'In the present housing market, renting a new apartment can be financially devastating to a person on a retirement or limited income. Yet, these people are often singled out by landlords for eviction because they often have been in the apartment for many years and thus pay lower rents.’ (1984 NY Legis Ann, at 109.)” (Matter of McMurray v New York State Div. of Hous. & Community Renewal, 135 AD2d 235, 238.) I find plaintiffs’ other arguments that the challenged provisions do not advance legitimate State interests because they are either superfluous, vague or too broad, to be entirely without merit (see, Matter of McMurray v New York State Div. of Hous. & Community Renewal, 135 AD2d 235, supra; Matter of Sourian v Higgins, 170 AD2d 258; Matter of Lopez v Mirabel, 127 AD2d 771; cf., Rent Stabilization Assn. v Higgins, 164 AD2d 283). Inasmuch as I find that there has not been any physical taking of plaintiffs’ property, and the challenged provisions substan *819 tially advance legitimate State interests, I find that there has been no violation of plaintiffs’ due process rights.
Accordingly, after review of all the authorities and papers, I find as a matter of law that on each of their causes of action plaintiffs have failed to state a claim upon which relief may be granted, their complaint is dismissed and their motion for summary judgment is denied. Defendants’ cross motion for summary judgment is granted to the extent of dismissing plaintiffs’ complaint for failure to state a claim and to the extent that this court declares the New York City Rent and Rehabilitation Law (Administrative Code of City of NY) § 26-408 (b) (1), and New York City Rent and Eviction Regulations (9 NYCRR) § 2204.5 (a) constitutional under both the Federal and State Constitutions, and not violative of any of plaintiffs’ rights herein brought in issue.