OPINION OF THE COURT
Per Curiam.
Order, dated June 20, 2005, reversed, without costs, petition reinstated, summary judgment of possession awarded to landlord on its nonprimary residence claim against tenant Cunningham, and matter remanded for further proceedings on the succession defense interposed by respondent Rowell.
The underlying notice of nonrenewal — sufficiently setting forth the facts supporting the landlord’s nonprimary residence claim — was sent by landlord via certified and regular mail on May 31, 2002, 92 days prior to the August 31, 2002 expiration date specified in the tenant’s most recent rent-stabilized renewal lease. The nonrenewal notice thus served as a proper predicate for the holdover summary proceeding, since it was timely served “at least 90 and not more than 150 days prior to the expiration of the lease term,” as required by the governing notice provision of the Rent Stabilization Code (see 9 NYCRR 2524.2 [c] [2]). The purpose of the 90-to-150-day nonrenewal notice — to communicate the landlord’s intention not to renew a stabilized lease and to provide a “window period” snapshot of the landlord’s reason(s) therefor — was fully served by the notice at issue. This is so even were we to assume, despite the absence of any sworn allegation on the point by tenant, that the notice was not actually received by tenant during the 90-to-150-day prelease expiration window period.
We are unpersuaded that the rule set forth in Matter of ATM One v Landaverde (2 NY3d 472 [2004]), requiring the addition *104 of five days to the 10-day statutory cure period for service by mail of notices requiring a tenant to rectify a claimed lease violation, should be extended beyond the narrow fact setting of that case. The rule enunciated in Landaverde was intended to “provide[ ] a practical and fair solution to [the] regulatory ambiguity” (Landaverde at 478) found to exist in the service and notice to cure provisions of the Emergency Tenant Protection Regulations there at issue (see 9 NYCRR 2508.1 [a]; 2504.1 [d]). Faced with a regulatory scheme that potentially might allow a tenant served by mail with a cure notice to remain unaware “ ‘of the date within which he or she may cure a [lease] violation until after that date has actually passed’ ” (id. at 476, quoting Matter of ATM One v Landaverde, 307 AD2d 922, 924 [2003]), and recognizing the “unpredictable results” (id. at 478) that such a scenario would create, the Court of Appeals concluded that promulgation of a so-called 10-day plus 5-day rule was “necessary ... to ensure that tenants are not disadvantaged by an owner’s choice of service method” (id.).
Reading the Landaverde opinion in context and in light of the issues presented (see Danann Realty Corp. v Harris, 5 NY2d 317, 322 [1959]), we decline tenant’s invitation to adopt a blanket rule requiring landlords to add five days to statutory notice periods upon the mailing of any and all notices “required by the rent regulations.” That the Landaverde rule was meant to be confined specifically and narrowly to the 10-day cure notice there involved is reflected in several passages of the Court’s opinion, including language declining to extend the five-day mailing allowance provided by CPLR 2103 to the commencement of summary proceedings generally (id. at 478) and its concluding statement “encouraging] DHCR to amend its regulations consistent with this determination in order to provide better guidance to parties who elect to serve notices to cure by mail” (id. [emphasis added]). Nor are any of the policy concerns giving rise to the “practical and fair solution” fashioned by the Landaverde court implicated in a situation where, as here, a 90-to-150-day notice of nonrenewal is served by mail. Unlike a 10-day notice to cure, a 90-to-150-day notice of nonrenewal does not require a tenant to undertake an affirmative act within narrow time constraints, but instead merely calls upon a tenant to elect whether to contest the merits of a landlord’s possessory claim following a lease termination date set months in advance or to vacate the demised premises in the interim. Thus, unlike a tenant who potentially may be deprived *105 of the full benefit of the mandated 10-day cure period by a landlord’s mailing of a notice to cure, a tenant who is served by mail with a nonrenewal notice within the 90-to-150-day period prescribed by the Code — even a notice whose delivery is unusually delayed — cannot reasonably be said to be “disadvantaged by an owner’s choice of service method” (Landaverde, 2 NY3d at 478).* Nor are we aware of any “unpredictable results” (id.) that potentially may be caused by a tenant’s delayed receipt of a properly mailed 90-to-150-day notice of nonrenewal. In sum, neither a textual analysis of the Landaverde opinion nor an examination of the policy concerns raised in the context of that breach of lease proceeding requires us to extend the “10 plus 5” rule adopted therein so as to invalidate the otherwise timely served notice of nonrenewal underlying this nonprimary residence proceeding.
Turning to the substantive issues advanced in the parties’ respective cross motions, the record, including tenant’s prelitigation correspondence and her opposing affidavit below, conclusively establishes that tenant permanently vacated the subject apartment by January 2002 and now maintains her primary residence in a house owned by her in Florida. Landlord is thus entitled to summary judgment of possession against tenant on the holdover petition. However, as the motion court correctly noted in its written decision, unresolved triable issues exist with respect to the succession claim raised by respondent Row-ell, tenant’s adult daughter. In view of the strong showing of succession rights made by the daughter via affidavits and documentary evidence, the factors pointed to by petitioner do not eliminate issues of fact as to the nature and extent of the daughter’s claimed cohabitation with the tenant during the relevant time period.

 That this tenant was meaningfully apprised of the landlord’s intention not to renew the lease was confirmed by tenant’s letter of June 14, 2002— written on a letterhead bearing the same Palm Coast, Florida, address specified by landlord in its May 15, 2002 notice of nonrenewal — acknowledging receipt of the nonrenewal notice and advising landlord’s principal of the tenant’s prior relocation to Florida.