OPINION OF THE COURT
George M. Heymann, J.
In this personal use holdover proceeding the respondent Carmen Rodriguez[1] has moved this court for an order granting summary judgment pursuant to CPLR 3212 on the following grounds:
(1) that the petition fails to state the facts upon which the proceeding is based;
(2) that the petitioners failed to serve the respondents with the notice of nonrenewal at least 90 days before the expiration of their rent-stabilized lease; and
*267 (3) that the respondent Rodriguez and her “husband,” Jose Lopez, are both disabled and that he is over 62 years of age and the petitioners have failed to offer “equivalent or superior” housing accommodations.
In the alternative, if summary judgment is denied, the respondent is seeking leave to conduct discovery pursuant to CPLR 408.
The third branch of the motion raises the issue of whether the “common law” marriage of the respondent, tenant of record, affords her the opportunity to claim an exemption from this personal use holdover proceeding on the theory that her elderly, disabled “husband” is a “spouse” entitled to such relief, as provided in the Rent Stabilization Code (RSC).
Factual Background
Respondent Carmen Rodriguez, the tenant of record, and her family have lived in the subject premises located at 446 Bergen Street, second floor, apartment 2R, Brooklyn, New York 11217 since 1978. She and Jose Lopez are not married but have lived together for over 40 years and have two biological children together, Yesina and William Lopez.
On December 28, 2007, the petitioner served a notice of non-renewal (Golub notice)[2]
[3]pursuant to RSC (9 NYCRR) § 2524.4 (a) (1), dated December 26, 2007, upon the respondents by substituted service at the subject premises. Thereafter, on December 31, 2007, two copies were mailed to each named respondent at said premises by both certified and regular first-class mail.
The respondents’ rent-stabilized lease was to expire on March 31, 2008 and they were informed that they were to “remove from said premises on or before March 31, 2008” as their “apartment is required for the use of [landlord’s] daughter Albana Zunce as her primary residence.” The notice further stated that
“Mr. Shpetim Zunce1[3]1 and his four children presently reside at 60 Endor Avenue, Staten Island New *268 York 10301. Mr. Zunce has three daughters ages 2, 15, and seventeen years old and a son who is 13 years old. Ms. Albana can no longer comfortably reside at 60 Endor Avenue, Staten Island, New York 10301, and requires her own apartment. Ms. Albana Zunce presently shares a room with her two other sisters.”
On January 4, 2008, respondent Rodriguez received the notice by certified mail and in response thereto sent a letter, dated January 8, 2008, by certified mail to the petitioners stating, in part, that
“[a]s for our response to your vengeful decision not to renew our current rent stabilized rental lease we would like to inform you that my husband is over 62 years of age and that my husband and I are both disabled. We are aware that the law states that for these reasons you can not evict us out of our home and you can not evict us with out giving us another equivalent apartment to reside in.” (Respondent’s exhibit E.)
Thereafter, on April 15, 2008, the petitioners commenced this proceeding by conspicuous service of the petition and notice of petition upon the respondents. To date, the petitioners have not offered to relocate the respondent Rodriguez and her family to another apartment.
Applicable Statutes
“[RSC § ] 2524.2 Termination notices “(a) . . .no tenant shall be removed or evicted from a housing accommodation by court process, and no action or proceeding shall be commenced for such purpose upon any of the grounds permitted in section . . . 2524.4 [Grounds for refusal to renew lease . . .] of [this] Part, unless and until the owner shall have given written notice to such tenant as hereinafter provided.
“(b) Every notice to a tenant to vacate or surrender possession of a housing accommodation shall state the ground under section . . . 2524.4 of this Part, upon which the owner relies for removal or eviction of the tenant, the facts necessary to establish the existence of such ground, and the date when the tenant is required to surrender possession.
“(c) Every such notice shall be served upon the ten *269 ant: . . .
“(3) in the case of a notice pursuant to sections 2524.4(a) ... of this Part, at least 90 and not more than 150 days prior to the expiration of the lease term.”
“[ESC § ] 2524.4 Grounds for refusal to renew lease . . . without order of the DHCE “The owner shall not be required to offer a renewal lease to a tenant . . . and may commence an action or proceeding to recover possession in a court of competent jurisdiction, upon the expiration of the existing lease term, if any, after serving the tenant with a notice as required pursuant to section 2524.2 of this Part [Termination notices] only on one or more of the following grounds:
“(a) Occupancy by owner or member of owner’s immediate family.
“(1) An owner who seeks to recover possession of a housing accommodation for such owner’s personal use and occupancy as his or her primary residence in the City of New York andlor for the use and occupancy of a member of his or her immediate family as his or her primary residence in the City of New York . . .
“(2) The provisions of this subdivision shall not apply where a tenant or the spouse of a tenant lawfully occupying the housing accommodation is a senior citizen or disabled person, as previously defined herein, unless the owner offers to provide and, if requested, provides an equivalent or superior housing accommodation at the same or lower rent in a closely proximate area . . .
“(4) No action or proceeding to recover possession pursuant to this subdivision shall be commenced in a court of competent jurisdiction unless the owner shall have served the tenant with a termination notice in accordance with section 2524.2(a), (b) and (c)(3) of this Part.” (Emphasis added.)
Analysis of Statutes and Conclusions of Law
(I) Failure to State the Facts upon Which this Proceeding is Based:
Paragraph 6 of the petition states that the apartment is rent stabilized but then proceeds to state that the “building contains *270 less than six (6) legal residential units.” (Emphasis added.) According to the respondent, said building contains eight residential units.
The respondent’s argument that the inconsistency in the petition renders it “impossible to know from the petition which of the contradictory statements is the mistaken one and therefore whether the premises are rent stabilized” (respondent’s mem of law at 16) is belied by her own statement in her letter to the petitioners, dated January 8, 2008, as set forth above, wherein she refers to her “current rent stabilized rental lease.”
Clearly, the word “less” was an unintended error and both parties have acknowledged said premises to be rent stabilized. (See Southcroft Co. v Konopko, 128 Misc 2d 179 [1985] [there was no apparent dispute as to coverage by rent stabilization, thus no prejudice to the tenant]; Paikoff v Harris, 185 Misc 2d 372 [1999] [a misstatement in the petition provides no basis for dismissal].) Therefore, this branch of the motion to dismiss the petition is denied.[4]
(II) Petitioner Failed to Timely Serve the Golub Notice:
The respondents allege that the petitioners did not provide them with adequate notice of their intention not to renew their lease agreement within the 90-to-150-day “window period” as prescribed by RSC § 2524.2 (c) (3),[5] in that the certified mail was not received until January 4, 2008, 87 days before the lease expired on March 31, 2008.
According to the respondent, “[w]here a predicate notice to a summary eviction proceeding is served by mail, service is considered effectuated five days after the date of mailing,” relying on the Court of Appeals holding in Matter of ATM One v Landaverde (2 NY3d 472 [2004]). Landaverde concluded that in order
“to afford tenants a 10-day cure period before they may be subject to lease termination for designated *271 violations . . . owners who elect to serve by mail must compute the date certain by adding five days to the 10-day minimum cure period .... In this manner, service will be deemed complete upon mailing, and a properly executed affidavit of service will raise a presumption that proper mailing occurred.” (Id. at 477-478.)
As this court stated in its decision 135 PPW Owners LLC v Schwartz (7 Mise 3d 1016[A], 2005 NY Slip Op 50629[U], *2 [2005]),
“although the Court [of Appeals] refers to Civil Practice Law and Rules (‘CPLR’) 2103 [b] [2] which requires the addition of five (5) days to prescribed periods for service by mail, the Court clearly stated that such provision applied only to pending actions and declined to extend its applicability to the commencement of summary proceedings.”
This court went on to observe that
“[fironically, in its attempt to find a ‘fair and practical solution to this regulatory ambiguity’ ([Landaverde\ at 478) the Court of Appeals has actually opened the floodgates to numerous conflicting opinions by judges of the housing court regarding the applicability of Landaverde to various types of notices other than a notice to cure.” (Id.)
The following decisions were then cited in favor of, and as opposed to, the applicability of Landaverde to the service of Golub notices: yes: Lynch v Dirks (NYLJ, Jan. 5, 2005, at 19, col 3); Shoshany v Goldstein (NYLJ, Feb. 9, 2005, at 18, col 3); Croman v Thompson (NYLJ, Feb. 23, 2005, at 21, col 3); no: KSLM Columbus Apts. Inc. v Bonnemere (NYLJ, Jan. 5, 2005, at 19, col 1); Gnann v Crawford (Civ Ct, NY County, Dec. 1, 2004, index Nos. L&T 73194/04, 73195/04, 73196/04).
In Trojan v Wisniewska (8 Mise 3d 382 [2005]), this court discussed the fact that the RSC was silent as to the method of service of termination notices.
“Although the RSC is clear about a landlord’s obligation to serve termination notices and the time frame within which they must be served, it is silent as to the method of service of such nonrenewal notices. Confronted with this issue in Mauro v Thorsen (NYLJ, Dec. 4, 1991, at 25, col 5), the court (Turner, J.) determined that RSC § 2524.2 (c) (2) (supra [notice of intent not to renew lease]) should ‘be con *272 strued in pari materia’ with ESC § 2523.5 (supra [notice for renewal of lease]) ‘in an attempt to resolve apparent ambiguities’ and concluded that in the absence of personal delivery there must be a mailing — ‘regular mail or what is commonly referred to as ordinary first class mailing.’ ” (8 Mise 3d at 389.)
Thus, if ordinary mail is sufficient for the service of predicate notices, there is no basis to conclude that the respondents herein were not provided with sufficient and timely notice.
The respondents argue that this court “adopted a too-narrow reading of Landaverde” in 135 PPW Owners LLC v Schwartz (supra). In Schwartz, unlike the instant matter, the respondent was not the tenant of the premises but a licensee and the court determined that it was not necessary to add five additional days to the mailing of the notice to quit pursuant to Real Property Actions and Proceedings Law § 713 (7). As there was no landlord-tenant relationship, the respondent in that case did not have the same status or protections to remain in the premises as the rent-stabilized respondents here, who have a claim of entitlement to the subject premises as leaseholders. As this court succinctly pointed out:
“[The Court of Appeals] clearly indicated that the additional five (5) day rule for mailing enunciated in CPLR § 2103 applied to pending actions and did not extend its applicability to the commencement of summary proceedings. But this is where the Court stopped short. Had the Court intended that an additional five (5) days be applied in every instance where a predicate notice is served by mail only, when not served personally, or in instances where mailing is an additional requirement, as with the service pursuant to RPAPL § 735, where personal service is unsuccessful and one of the two other prescribed methods of service are utilized, it could have simply stated as much. On the other hand, it could have also explicitly stated when it does not apply. As a result of the Court limiting its decision exclusively to the notice to cure addressed in the appeal, without more, the lower courts are all over the map in trying to ascertain when and to which notices the additional five (5) days are to be factored in.” (2005 NY Slip Op 50629[U], *5.)
While this court took no position in Schwartz with respect to the application of the five-day rule regarding Golub notices, *273 it does so now and agrees with the reasoning in KSLM Columbus Apts. Inc. v Bonnemere (supra), where the court declined to apply Landaverde (supra), to a Golub notice stating that “[a]ny action taken by the tenant immediate or otherwise will not negate the landlord’s intent not to renew the lease” (NYLJ, Jan. 5, 2005, at 19, col 1). Similarly, this court concurs with the holding in Skyview Holdings, LLC v Cunningham (13 Misc 3d 102, 104 [App Term, 1st Dept 2006]), where the Appellate Term “decline[d] tenant’s invitation to adopt a blanket rule requiring landlords to add five days to statutory notice periods upon the mailing of any and all notices ‘required by the rent regulations.’ ” Therefore, the second branch of the motion to dismiss the petition is denied.
(Ill) Petitioner Failed to Offer Alternative Housing Accommodations to the Respondents:
The respondent opines that she is entitled to be provided with an equivalent or superior housing accommodation by the petitioners and their failure to offer same warrants dismissal of this proceeding. In the case at bar, the petitioners concede that no offer for alternative housing was made because they believe such relief is warranted only if the tenant, or the “spouse” of the tenant, is a senior citizen and/or a disabled person, as defined in the ESC, and that neither category applies to the respondent tenant. It is the petitioners’ position that the “husband” is not a “spouse” as intended by the statute and, therefore, his age and disabilities have no relevance in this proceeding, and cannot be used by the respondent as an affirmative defense. Thus, this entire issue hinges on the definition of “spouse”[6] as the Legislature intended it to be used in personal use holdovers, as set forth in ESC § 2524.4 (a) (2) (supra).
ESC § 2524.4 provides only two circumstances under which a landlord/owner can refuse to renew a rent regulated lease: (1) occupancy by the owner or a member of the owner’s immediate family (subd [a]); or (2) the tenant does not occupy the housing accommodation as his or her primary residence (subd [c]).
As set forth above, ESC § 2524.4 (a) (1) entitles the owner or a member of his or her “immediate family” to occupy the subject premises as a primary residence. Subdivision (a) (2) provides two exemptions from an owner use holdover proceeding: if the tenant or tenant’s spouse is a “senior citizen” as defined in *274 RSC § 2520.6 (p) or a “disabled person” as defined in section 2520.6 (q).
In contrast to subdivision (a) (1) of section 2524.4 of the RSC, which contains the broad category of “immediate family”[7] with respect to who may seek occupation of the regulated premises on the owner’s behalf, the Legislature very specifically and narrowly limited the two exemptions to such an action to the tenant or “the spouse of a tenant lawfully occupying the housing accommodation.” (RSC § 2524.4 [a] [2] [emphasis added].) A literal reading of this statute indicates that these are the only two individuals who are entitled to be offered, or request and be provided, “an equivalent or superior accommodation at the same or lower regulated rent in a closely proximate area” if either or both of them meet the criteria for these exemptions.
The respondent takes the position that failure to incorporate an offer for alternative housing accommodations in the predicate Golub notice renders the proceeding defective ab initia. The petitioners, on the other hand, contend that there was no necessity to make such offer because the tenant of record is not a senior citizen, nor is she disabled.[8] They further maintain that regardless of whether her “husband” is a senior citizen and disabled it is of no consequence in this proceeding because the narrow language of who can benefit from these exemptions, other than the tenant, must be strictly construed to eliminate all but her legal spouse. The petitioners adhere to their argument that the “husband,” Jose Lopez, is not the tenant’s legal spouse, and, therefore, the offer to provide alternative housing accommodations need not be made and the absence of such an offer is not an impediment to the prosecution of this proceeding.
In Borg v Santos (17 Mise 3d 472 [2007]), this court addressed the issue of whether it is necessary for an owner to include in the Golub notice an offer of “equivalent or superior” housing *275 accommodations in “close proximity” to the premises he or she is seeking to recover. There it was held that someone’s age or disability should not “be subject to the landlord’s conjecture, speculation or guesswork” and that the tenant had the burden to affirmatively raise the defense of age or disability (at 478).
Neither section 2524.2 nor section 2524.4 require that a predicate notice include language that if the tenant was a senior citizen (or disabled) the landlord would be required to provide equivalent or a superior housing accommodation at the same or lower regulated rent in a closely proximate area. A tenant’s entitlement to relocation to equivalent housing under ESC § 2524.4 only arises after he or she proves that he or she is 62 years old. A landlord who seeks owner occupancy need not first determine that a tenant is 62 years old or disabled. Eather, the fact that a tenant is a senior citizen or disabled is a defense to the proceeding which must be pleaded and proved by respondent. Once respondent establishes that she is in fact a senior citizen (or disabled) then petitioner’s obligation to relocate her arises. (Gordon v Kahn, NYLJ, Jan. 8, 2003, at 19, col 2 [Civ Ct, NY County].)
Citing Gordon v Kahn, the court in Miller v Jones (NYLJ, Jan. 28, 2004, at 19, col 1 [Civ Ct, NY County]) reiterated this position:
“A tenant who claims the affirmative defense that he/she is a Senior Citizen to an owner’s use proceeding and, thus, is protected under § 2524.4(a)(2) of the ESC, must first plead and prove that he or she is sixty-two years of age or older. See, Gordon v. Kahn, NYLJ, Jan. 8, 2003, at 19, col 2 (Civ Ct, New York Co). Once a landlord learns that the tenant is a Senior Citizen under ESC § 2520.6(p), then the landlord’s obligation to relocate him/her arises. Id. A landlord/owner, however, is not affirmatively required to ascertain if a tenant is protected under § 2524.4(a)(2) of the ESC as a Senior Citizen before proceeding to recover the stabilized apartment. (Id.)”
Similarly, in Mora v Cassino (196 Misc 2d 403, 405 [Civ Ct, NY County 2003]), the court held that “[t]here is no indication in the statute when the offer is to be made or whether an allegation that it was made must be included in the notice of nonrenewal or the petition.”
Based on this court’s reasoning in Borg v Santos (supra), the court finds that the petitioners’ failure to offer alternative *276 housing accommodations to the respondent in the Golub notice is not a bar to this proceeding absent proof that she is “a disabled person” entitled to such relief and that the petitioners were aware of this prior to the service of said notice. Her mere assertions of disability in a letter, after the fact, without more, is insufficient.
This brings the court to the heart of the respondent’s motion for summary judgment.
In addition to her argument regarding the predicate notice,[9] the respondent also seeks to assert her “right” to be provided alternative housing accommodations on the supposition that her “husband,” Jose Lopez, is a “family member” who would therefore be entitled to the same benefits as a “spouse.”
Thus, the respondent is now seeking a determination from this court to expand the definition of “spouse” to include her common-law “husband,” based upon the Court of Appeals reasoning in Braschi v Stahl Assoc. Co. (74 NY2d 201 [1989]),[10] and the subsequent codification of that decision in ESC § 2520.6 (o) (2) regarding nontraditional family members who have an emotional and financial commitment and interdependence with the tenant.
The court is aware of only four published decisions, outside of the realm of succession cases, that directly addressed the issue of whether the term “spouse” incorporates nontraditional family members with respect to personal use holdover proceedings. Two of the cases, Kahn v Pizarro (NYLJ, Sept. 1, 1993, at 23, col 1) and Arias v Vasquez (NYLJ, Apr. 26, 1999, at 28, col 3 [App Term, 1st Dept]), cited by the petitioners, opposed the concept of expanding the definition of “spouse” in personal use holdover proceedings to include nontraditional family members, whereas the other two matters, Knafo v Ching (NYLJ, Dec. 6, 2000, at 28, col 2) and Mandell v Cummins (NYLJ, July 25, 2001, at 18, col 4), relied on by the respondent, sought to *277 distinguish themselves from those earlier holdings in reaching the opposite conclusion.
In Khan v Pizarro (supra), the respondent, Lucy Pizarro, was in a committed relationship with Juan Diaz that was more than a decade old when the petitioner commenced a personal use holdover proceeding. Although they lived together as if they were legally husband and wife, Pizarro’s prior marriage to someone else had not been legally dissolved. In response to the petitioner’s case, Diaz claimed to be disabled and, as a “family member,” sought to permanently enjoin their eviction and to declare their entitlement to occupy the apartment. Although concluding that Diaz did, in fact, suffer from a severe disability and that he and Pizarro maintained “a very high level of emotional and financial commitment” for a dozen years, the court nonetheless held that Diaz was not a “spouse” eligible to claim an exemption to the landlord’s proceeding.
“Since Mr. Diaz is neither the lawful spouse of Ms. Pizarro nor the tenant of record, he is unable to qualify for the claimed exemption of a disabled person. All the facts presented herein clearly demonstrate that respondent Diaz would in fact fall within the purview of a family member based on the criteria set forth in Braschi, supra. Having substantially met the described criteria, respondent Diaz would unequivocally qualify for succession rights to this apartment as a family member. However, the instant proceeding and affirmative defense raised herein do not pertain to the issue of apartment succession rights but to petitioner’s right to recover possession of this apartment predicated on immediate family need. . . .
“Common sense should dictate that a family member as defined in ESC 2520.6(n) and (o) should be protected. Nowhere in the aforementioned sections of the Rent Stabilization Code does such a proviso exist for a family member.
“This Court cannot go beyond the plain meaning of the Code nor should it attempt to invade or usurp the legislative prerogatives in this area. A review of the legislative history fails to disclose any information which might have been helpful is resolving this sensitive matter.
“While respondents arguments are cogent and persuasive, the Court is constrained to follow the *278 clear meaning of the statute.” (NYLJ, Sept. 1, 1993, at 23, cols 3-4 [emphasis added].)
In Arias v Vasquez (supra), the Appellate Term reached the same conclusion as did the court in Kahn v Pizarro (supra). “The protection afforded senior citizens and the disabled by this Code provision [9 NYCRR 2524.4 (a)
(2)] extends only to ‘a tenant or the spouse of the tenant’ (Id.). Here it is undisputed that the senior citizen in question is neither the tenant nor tenant’s spouse but rather, an unrelated member of tenant’s ‘extended family’. The ‘Braschi’ criteria governing succession rights (see Braschi v. Stahl Associates, 74 NY2d 201; 9 NYCRR § 2523.5 [b][l]; § 2520.6[o]) are not appropriately applied to the owner occupancy exemption. The term ‘family member’ has been broadly defined by the Legislature in the context of succession, whereas the obligation to offer alternative housing in owner occupancy proceedings is more particularly limited to tenants and their responses [szc][11!” (NYLJ, Apr. 26, 1999, at 28, cols 3-4.)
The first published decision that held that a gay life partner qualified as a “spouse” for the purpose of a personal use holdover proceeding was Knafo v Ching (supra). In that case the court found that, like the succession regulations, the regulations regarding owner use proceedings were remedial in nature to avoid displacement of elderly or disabled tenants by providing for relocation. Quoting from Lesser v Park 65 Realty Corp. (140 AD2d 169 [1st Dept 1988]), the court noted that “remedial statutes should be liberally construed to carry out the reform intended and spread its beneficial effects as widely as possible.” (NYLJ, Dec. 6, 2000, at 28, col 4.) Discussing the relationship between respondent and his life partner who was disabled, the court stated that “[a]ll that separates them from traditional spouses is the fact that they are of the same sex and therefore cannot legally marry” (id.). The court went on to eschew the holdings in Kahn v Pizarro and Arias v Vasquez (supra) as follows:
“Petitioner cites Arias v. Vasquez for the proposition that Section 2524.4(a)(2) does not cover nontraditional spouses ... In Arias the senior citizen in *279 the tenant’s household was an ‘unrelated member of the tenant’s extended family’, not a nontraditional spouse. Khan v. Pizarro, also relied upon by the petitioner, is not controlling precedent, and this court respectfully disagrees with its reasoning” (NYLJ, Dec. 6, 2000, at 28, col 4 [citations omitted]).
Subsequent to this decision, a similar determination was reached in Mandell v Cummins (supra). As in Knafo v Ching (supra), the tenant sought protection from the owner use proceeding on the ground that his gay life partner was disabled and that the spousal exemption was intended to include gay life partners. After reiterating the reasoning in Knafo v Ching, the court also declined to accept the holdings in Kahn v Pizarro and Arias v Vasquez (supra).
“In Kahn, the tenant, although in a long-term relationship, was still, according to the court, presumably married to another man. Ms. Pizarro had at least the possibility of divorcing her husband and marrying the person with whom she maintained a long term relationship, thereby insuring his right to the exemption. In the instant case this option represents a legal impossibility under current law.
“The other case cited by petitioner, Aria[s] v. Vasquez, supra, is also distinguishable. In Arias the senior citizen seeking the owner-occupancy exemption was characterized as ‘an unrelated member of the tenant’s extended family,’ not a life partner or spouse in any sense of the word.” (NYLJ, July 25, 2001, at 18, col 6.)
Although both Knafo v Ching and Mandell v Cummins (supra) come to the same conclusion that the BSC is remedial in nature and therefore a gay life partner qualifies as a “spouse” because he or she and the tenant cannot “legally marry,” these cases are not dispositive of the issue at hand.[12] There is no question that the respondents in all four of the above cases, as well as the case at bar, are entitled to qualify for succession rights and all the decisions cited above support that proposition. However, the *280 courts in Knafo v Ching and Mandell v Cummins (supra), as well as the respondent herein, have circumvented the real issue — the Legislature’s purpose and intent by incorporating the unambiguous singular word “spouse,” as opposed to “immediate family” or “family member” (each of which is comprised of 20 different individuals), with respect to the exemption afforded to the tenant in personal use holdover proceedings.
As the court in Kahn v Pizarro (supra) aptly pointed out, a commonsense approach would suggest that any family member should be provided the same protections as the tenant of record in any situation involving a potential termination of tenancy. However, as previously noted, with respect to personal use proceedings, the Legislature specifically allowed for the broad category of “immediate family” for the owners, but chose not to do so for the tenants. Therefore, it is difficult to argue that it was an error, or oversight, that can be ignored or expanded upon by judicial fiat. It has been held that “New York gives greater rights to married couples than to persons in other types of relationships.” (Zagrosik v New York State Div. of Hous. & Community Renewal, 12 Misc 3d 1076, 1079 [Sup Ct, NY County 2006].)
As stated in First Hudson Capital, LLC v Seaborn (54 AD3d 251, 253 [2008]),
“neither the Appellate Term nor this Court may develop its own ‘common-law jurisprudence’ in an area as thoroughly legislated and highly regulated as the rent stabilization laws in New York City by ignoring the plain language of a statute, its clear legislative intent, and binding case law precedent of this law applying the statute.” (See Ebanks v Skyline NYC, LLC, 21 Mise 3d 40 [2008].)
This court takes exception to the logic in Knafo v Ching and Mandell v Cummins (supra), which sought to distinguish the decision in Arias v Vasquez (supra), the only appellate case addressing the present issue, because it pertained to “an unrelated member of the tenant’s ‘extended family,’ ” claiming that it is not the same as a “nontraditional spouse.” Clearly, this is nothing more than semantics or splitting hairs in order to achieve a desired result. How can it be argued that a nontraditional spouse is “related” to the tenant? Any nontraditional family member, such as a gay life partner, is outside the list of the defined familial relationships which is why the RSC refers to such individual (s) as “[a]ny other person residing with the tenant.” (RSC § 2520.6 [o] [2] [emphasis added].)
*281 By arguing that a nontraditional family member who is living with the tenant in a committed relationship can stand in the place of a legal spouse, why not push the envelope and think outside the box to allow other “family members” with disabilities, such as a child, or a parent or grandparent of the tenant, who may be over 62 year of age, to come forward and claim an exemption to avoid removal from their homes unless relocated by the owner. Are the “harsh consequences of displacement” (Knafo v Ching, NYLJ, Dec. 6, 2000, at 28, col 4) any less traumatic when the senior citizen or disabled person in the household is someone other than the tenant or tenant’s legal spouse?
While sympathetic to the efforts of those courts seeking to expand the class of individuals who can qualify for the exemptions to owner use proceedings, this court is of the opinion that only the Legislature has the authority to do so.[13]
Assuming, arguendo, that this court were to follow the holdings in Knafo v Ching and Mandell v Cummins (supra), as the respondent encourages the court to do, the outcome would remain the same — that neither the respondent nor her “husband” are entitled to be offered alternative housing accommodations. The common denominator in the four cases pre *282 sented by both parties is the fact that it was legally impossible for the respondents therein to marry.
In the case at bar, however, there is no legal impediment for the respondents Rodriguez and Lopez to solemnize their relationship, which for all intents and purposes parallels that of a legally married couple. There does not appear to be any dispute that they probably meet most, if not all, of the eight factors to be considered in determining whether there is an “emotional and financial commitment, and interdependence” between them to qualify Mr. Lopez as a “family member.” (RSC § 2520.6 [o] [2].) But that is not enough. For whatever personal reasons they chose to live for over four decades as “husband” and “wife” without seeking the benefit of clergy, or any other individual who is authorized to perform marriage ceremonies in this state, they must now accept the consequences of that choice. As the State of New York does not recognize common-law marriages, this court cannot grant the relief sought herein which, in effect, would condone and legalize that which is not legal.[14] Therefore, the third branch of the motion to dismiss the petition is denied.
(IV) Discovery:
The respondents’ motion for discovery is granted, there being no opposition to said request in the affirmation in opposition submitted by the petitioners’ counsel. The respondents are directed to complete all discovery in accordance with CPLR 408 and article 31 no later than December 5, 2008. Any motions for preclusion, etc., are to be directed to the judge presiding in the resolution part.
Accordingly, the respondents’ motion for summary judgment is denied for the reasons enunciated in this decision. The respondents’ alternative request for discovery is granted as set forth herein.

. Although the caption contains the names of four respondents, Carmen Rodriguez is the tenant of record and any reference to the “respondent” in the singular pertains to Ms. Rodriguez.

. Golub v Frank, 65 NY2d 900 (1985).

. The name at the bottom of the notice is “Sheptim” Zunce and that is how it appears in the caption of the petition. However, in the body of said petition the name of the registered managing agent is “Shpetim” Zunce. A review of all the exhibits (A-J) attached to the respondent’s motion papers indicates that the petitioner has used both names in previous correspondence and court proceedings between the parties.

. Although the petitioners’ counsel attaches a copy of a proposed amended pleading to his affirmation in opposition (exhibit A), there is no cross motion to amend at this time. Counsel can so move at or before the trial of this proceeding, or move to conform the pleadings to the proof at trial.

. Respondent’s memorandum of law repeatedly cites 9 NYCRR 2524.2 (c) (2) with reference to the service of the Golub notice “at least 90 and not more than 150 days prior to the expiration of the lease term.” This paragraph actually pertains to nonrenewal of the lease when the landlord alleges that the housing accommodation is not occupied by the tenant as his or her primary residence. Subdivision (c) (3) is the appropriate provision for personal use holdover proceedings.

. RSC § 2520.6 (“Definitions”) does not contain any definition of, or reference to, the word “spouse”; only the words “husband” and “wife” are used when defining “immediate family” and “family member.”

. As defined in RSC § 2520.6 (n), “Immediate family” includes: “A husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law, or daughter-in-law of the owner.” The persons included in the definition of “Family member” are identical except that they are related to the tenant.

. Although the respondent stated in her letter of January 8, 2008 to the petitioners that both she and her “husband” are “disabled” the record is completely devoid of any documentation to support her statement regarding her “disability.” (Cfi Mozaffari v Schatz, 21 Mise 3d 1103[A], 2008 NY Slip Op 51942[U] [2008] [where the court found that the respondent was disabled and granted summary judgment, directing the petitioner to offer equivalent or superior housing accommodations within 30 days].)

. Except for the omission of an offer to provide alternative housing accommodations, the respondent has not challenged the content of the Golub notice itself. (See Giancola v Middleton, 21 Mise 3d 34 [2008].)

. The court’s ruling was limited to determining the meaning of the term “family” as it was used in the context of succession under the New York City Rent and Eviction Regulations. There it found that “family includes two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence” (74 NY2d at 211). This holding was thereafter extended to apply equally to rent-stabilized tenants. (See East 10th St. Assoc, v Estate of Goldstein, 154 AD2d 142 [1990].)

. This was clearly a typographical error in the text. Obviously, the intended word is “spouses.”

. This court’s reference to Mandell v Cummins in its decision in Trojan v Wisniewska (supra), regarding the issue of discovery, was not intended to support the holding in Mandell with respect to the expansion of the term “spouse.” The statement by respondent’s counsel in paragraph 15 of his reply affirmation that “[t]he Court lifted up Mandell” because it gave a description as to why discovery was granted in that case erroneously implies an incorrect interpretation.

. See Zagrosik v New York State Div. of Hous. & Community Renewal (supra), where the tenant commenced a CPLR article 78 proceeding to compel the DHCR to add his domestic partner’s name to his lease pursuant to RSC § 2522.5 (g). The petitioner argued that his domestic partner was entitled to the same rights that spouses have under the RSC. He relied on the following cases: Braschi v Stahl Assoc. Co. (supra); East 10th St. Assoc, v Estate of Gold-stein (154 AD2d 142 [1990]); Knafo v Ching (supra); and Mandell v Cummins (supra). In granting the respondent’s motion to dismiss, the court held:
“There is no merit to petitioner’s argument that when all parts of Rent Stabilization Code § 2522.5 (g) (1) are read together, the word spouse must include a domestic partner. This conclusion is based on petitioner’s incorrect interpretation of Braschi v Stahl Assoc. Co. and East 10th St. Assoc, v Estate of Goldstein. Neither of those cases, as noted, treat a domestic partner as a spouse who must be added to a lease.
“Nor is there any merit to petitioner’s argument that because two Civil Court cases held that ‘spouse’ includes a domestic partner, that is the equivalent of ‘a judicial interpretation of a statute [that] is binding on subsequent courts as if incorporated into the statute itself.’ This court is not bound either by Civil Court rulings or by holdings by courts of coordinate jurisdiction. Rather, this court is only bound by appellate court holdings. The First Department decision in Hernandez v Robles [26 AD3d 98 (2005)] is binding authority that is contrary to petitioner’s argument.” (12 Mise 3d at 1079-1080 [citations omitted].)

. Although New York does not allow common-law marriages to be created within the state, it will recognize such a relationship as valid if created in another state that recognizes it, provided that all of the requirements of that jurisdiction are met. In this proceeding, there has been no evidence presented that Rodriguez and Lopez have previously held themselves out as husband and wife in another jurisdiction that recognizes such a union.
On May 14, 2008, Governor Paterson issued a directive instructing all state agencies to revise their policies and regulations to recognize same-sex marriages performed in other jurisdictions such as Massachusetts, California and Canada. What impact this will have on the Rent Stabilization Code, etc., remains to be seen.